**Daniel R. GARZA, Appellant,**

v.

**Roberto R. GARZA, Individually and as Executor, and Angela R. Garza, Appellees.**

No. 14374.

Court of Civil Appeals of Texas.

San Antonio.

April 14, 1965.

Rehearing Denied May 12, 1965.

Fidencio G. Garza, Jr., Falfurrias, for appellant.

Lloyd, Lloyd, Dean & Ellzey, Alice, for appellees.

BARROW, Justice.

This suit was filed by appellant, Daniel R. Garza, on October 4, 1963, to cancel and hold for naught an order of July 5, 1963, admitting to probate the last will of Ramon G. Garza, deceased, which was executed on August 5, 1959. Appellant, a son of deceased, sought to set the will aside upon the theory of undue influence by testator's other son and daughter, Roberto R. Garza and Angela R. Garza, who were the proponents of the will. The trial court granted proponents' motion for instructed verdict after appellant had rested his case, and entered a take-nothing judgment.

The primary question before this Court is whether the record contains any evidence of probative force to raise an issue of fact that undue influence was exercised by Roberto R. Garza and/or Angela R. Garza in the execution of the will which had been admitted to probate.

Ramon G. Garza died in Brooks County on April 29, 1963, at the age of eighty-two years, and was survived by his three children, Daniel, Roberto and Angela. Under his will proponents, Roberto and Angela, shared his entire estate. Daniel was mentioned in this will as follows: "I have made no devise or bequest under this will to my son, Daniel R. Garza, because provision has been previously made for him by me." Testator's wife, Teresa, died intestate in 1953, and in 1955 a partition deed was executed by Ramon and his three children, whereby a specific 75.89 acres was conveyed in fee to Daniel, and the remaining interest in Teresa's property was conveyed by Daniel to Ramon and proponents, jointly.

There is no direct evidence of any undue influence, but appellant urges that there is evidence of circumstances which are sufficient to raise a fact issue of un-

due influence under the holding in Long v. Long, 133 Tex. 96, 125 S.W.2d 1034. These asserted facts are: (1) the weakness of mind and body of testator because of his age and infirmities; (2) the unnaturalness of testator's will by .exclusion of one of his three children; (3) the availability of opportunity for proponents to influence their father; (4) the circumstances surrounding the execution of the will; and (5) proponents' management of testator's business and affairs.

■ The Supreme Court in Rothermel v. Duncan, 369 S.W. 917 (1963), restated the rules applicable to an assertion of undue influence. The Court said: "Thus, before a testament may be set aside on the grounds of undue influence the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence."

■ It was further said: "In the absence of direct evidence all of the circumstances shown or established by the evidence should be considered; and even though none of the circumstances standing alone would be sufficient to show the elements of undue influence, if when considered together they produce a reasonable belief that an influence was exerted that subverted or overpowered the mind of the testator and resulted in the execution of the testament in controversy, the evidence is sufficient to sustain such conclusion. Barksdale v. Dobbins, Tex.Civ.App. (1940), 141 S.W.2d 1035, wr. refused. However, the circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence. Stewart v. Miller, supra. This is so because a solemn testament executed under the formalities required by

law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing. Burgess v. Sylvester, 143 Tex. 25, 182 S.W.2d 358."

At the time the will was executed, testator was seventy-seven years of age, but there is no showing that his mind and will were weak. To the contrary, each of the four witnesses who testified on this phase of the case, said that testator was a very strong-willed individual and they knew of no one who could influence him. He was hospitalized sometime in 1959, and this illness had weakened him physically to where he used a cane in walking and was not as active as in the past.

There is no evidence that testator executed any will prior to the one in controversy. It was prepared by E. G. Lloyd, Esq., who represented proponents in this case. Mr. Lloyd testified that he had never represented any of the parties until testator came to his office in Alice about a week or ten days before the will was signed. Testator was accompanied by Roberto and I. J. Benavides, who acted as interpreter. Mr. Lloyd testified that testator was very definite in his desires, and that Roberto took no part in the discussions. Testator advised Mr. Lloyd that he had provided for his son Daniel in an earlier partition of the estate of his deceased wife, which accounted for the provision in the will relating to Daniel. On August 5, 1959, the same three persons returned for testator to execute the will. Mr. Lloyd sent for a clerk in a nearby store, who read and explained the will to testator before it was executed. After its execution, the will was delivered to testator who took it with him. Mr. Lloyd denied any consultation with Roberto concerning preparation of the will.

For many years prior to his death, testator lived on and operated a ranch in Brooks County. Roberto, who was a widower, lived with him and helped his father run this ranch. Angela, who was unmarried, also lived on this ranch and ran the household after the death of her mother. Daniel was married and lived with his family on his own place. There was no evidence of other than a normal father-child relationship between any of the children and testator. As his father's health declined, Roberto assumed more of the management of the ranch. Testator maintained his own bank account up until his death, and there is no showing that either of proponents dominated testator or influenced his decisions in any way.

 It is our opinion, from an examination of this record, that the circumstances are not sufficient to produce a reasonable belief that an influence was exerted that subverted or overpowered the mind of testator and resulted in the execution of this will. As was said in Rothermel v. Duncan, supra, the exertion of influence that was undue cannot be inferred alone from opportunity, but there must be some testimony, direct or circumstantial to show that influence was not only present but that it was in fact exerted with respect to the making of the testament itself. There is no such evidence in this record. See also, Boyer v. Pool, 154 Tex. 586, 280 S.W.2d 564 (1955); Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208 (1954); Burgess v. Sylvester, 143 Tex. 25, 182 S.W.2d 358 (1944); Kirkpatrick v. Raggio, Tex.Civ.App., 319 S.W.2d 362, wr. ref., n. r. e.

 Appellant also complains of the trial court's exclusion of testimony offered from the witness Cantu to the effect that Angela had employed Cantu, after the death of her father, to construct a new home for her and agreed to pay $18,000.00 in cash for same. This testimony was not offered on the question of undue influence, but to show that Angela profited by the will. This fact is shown by the will, together with the inventory and appraisement, and by the bank account of testator at the time of his death. The trial court did not err in excluding same. In

any event, such evidence was merely cumulative and its exclusion would be harmless. Rule 434, Texas Rules of Civil Procedure; Medina Electric Cooperative, Inc. v. Ball, Tex.Civ.App., 368 S.W.2d 227, no wr. hist.

The judgment is affirmed.